Stephen M. Doniger (SBN 179314)
stephen@donigerlawfirm.com
Scott A. Burroughs (SBN 235718)
scott@donigerlawfirm.com
Trevor W. Barrett (SBN 287174)
tbarrett@donigerlawfirm.com
Justin M. Gomes (SBN 301793)
jgomes@donigerlawfirm.com
DONIGER / BURROUGHS
603 Rose Avenue
Venice, California 90291
Telephone: (310) 590-1820
Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| WONGAB CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>TARGET CORPORATION; et al.,<br><br>Defendants. | Case No. 2:18-cv-02625-JAK-AS<br>*Hon. John A. Kronstadt Presiding*<br><br>**WONGAB CORPORATION'S OPENING CLAIM CONSTRUCTION BRIEF**<br><br>**Hearing Date: November 19, 2018**<br>**Time:         10:30 a.m.**<br>**Courtroom:   10B - 1st Street** |
|---|---|

- 1 -

*TO THE HONORABLE COURT, ALL PARTIES, AND ATTORNEYS OF RECORD:*

PLEASE TAKE NOTICE THAT Plaintiff, Wongab Corporation, hereby submits its Opening Claim Construction Brief regarding terms used in Claims 1, 2, 3, 4, 5, 6, 7, and 8 of Patent No. 8,448,476 B2 ('476 Patent").

### I. Introduction

This case involves one patent – the '476 Patent – asserted by Wongab, a fabric company that has created and marketed fabrics for many years. The '476 Patent issued on May 28, 2013. It claims priority from a Korean application filed on March 4, 2010.

The '476 Patent discloses a new and unique process by which warp-knitted base fabric can be printed with network structures – or blocks of loops – that have different shapes and sizes and which can be arranged in offset patterns. The patent claims cover the resulting fabric. This fabric can be used for garments in which it is used by itself or in conjunction with another design sewn on top of the patented fabric.

The inventor realized that the warp-knitted base fabrics in the market all bore uniform knitted structures, which did not appeal to the eye the way a more varied structure would. So, he set about to create a process that would create a warp-knitted base fabric that would include multiple, varying design patterns. One network of loops would have a different shape than the network of loops above and beside this network. The end result is a base fabric with a more compelling visual appeal than the basic warp-knit fabric, which is entirely uniform.

An illustrative fabric created by the process disclosed in the '476 Patent appears as follows:

**Illustration from '476 Patent**:



Each of the above loop blocks is a network or unit organization. As can be seen from the image, each of the loop blocks has a different size and internal loop shape as those around above, below, and adjacent.

The Patent Offices of both Korea and the United States granted patents for the above fabric. Claim 1 of the '476 Patent recites:

1. Warp knitting fabrics, comprising: a ground organization formed with warps knitted into a loop shape; and a pattern organization knitted on the ground organization, wherein the ground organization includes two or more unit designs continuously arranged in a transverse direction of the ground organization, each of the unit designs comprises two or more unit organizations arranged in a longitudinal direction of the ground organization, each of the unit organizations comprising a

specific loop shape of a network structure formed by a chain of a specific chain number group comprising an array of a plurality of chain numbers, and each of the unit organizations has a different loop shape of a network structure from each other.

Claim 2 depends from claim 1, and adds that each unit organization is created by knitting the loops of the same shape in the longitudinal direction:

2. The warp knitting fabrics according to claim 1, wherein each of the unit organizations is formed by consecutively knitting a plurality of loops having the same shape in the longitudinal direction.

Claim 3 depends from claim 1, and adds that the networks are knit by multiple guidebars with multiple groups in each chain:

3. The warp knitting fabrics according to claim 1, wherein, the unit organizations are knitted by at least two ground guidebars linked with the chain of the specific chain number group comprising the array of the plurality of chain numbers.

Claim 4 depends from claim 1, and adds the various differing shapes for the loops in each network:

4. The warp knitting fabrics according to claim 1, wherein the loop shape of the network structure is any one of a quandrangular shape, a diamond shape, a lozenge shape, and a hexagonal shape.

Claim 5 depends from claim 1, and adds that each is arrayed not directly adjacent to, but instead below or above, the block next to it:

5. The warp knitting fabrics according to claim 1, wherein the ground organization comprises at least two-row unit designs, and the unit organizations of any one unit design are arrayed in zigzag with the unit organizations of another unit design in the transverse direction.

Claim 6 depends from claim 1, and adds the side-by-side arrangement of the unit organizations:

6. The warp knitting fabrics according to claim 1, wherein the ground organization comprises at least two-row unit designs, and the unit organization of any one unit design are arrayed in parallel with the unit organizations of another unit design in the transverse direction.

Claim 7 depends from claim 1, and adds that each block of loops will be wider than the one next to it:

7. The warp knitting fabrics according to claim 1, wherein the ground organization comprises at least two-row unit designs, and the width of any one unit design is wider than that of another unit design adjacent to the one unit design in the transverse direction.

Claim 8 depends from claim 1, and adds that each block of loops will be longer than the one above it:

8. The warp knitting fabrics according to claim 1, wherein the length of one unit organization is longer than that of another unit organization adjacent to the one unit organization in the longitudinal direction.

Wongab seeks to protect the foregoing, which it created and which did not before appear in the market.

## II. Legal Standard for Claim Construction

"[W]ords of a claim are generally given their ordinary and customary meaning." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (internal quotations omitted). "[T]he ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Id*. at 1313. "[T]he person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." Id. "In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges,

- 5 -

and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." Id. at 1314. Where a claim term is not easily understood, Courts look to "the words of the claims themselves, the remainder of the specification, the prosecution history, and extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art." Id.

### III.  Wongab's Constructions are Proper

#### A.  Plain and Ordinary Meaning Applies in Most Cases

For many of the terms used in the '476 Patent, the plain and ordinary meaning of the word suffices.

#### B.  Definitions Given within the Specification

A patent applicant is entitled to be its own lexicographer. "Consistent with that general principle, our cases recognize that the specification may reveal a special definition given to a claim term by the patentee that differs from the meaning it would otherwise possess. In such cases, the inventor's lexicography governs." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1316 (Fed. Cir. 2005), citing *CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1366 (Fed. Cir. 2002). And, "the specification may reveal an intentional disclaimer, or disavowal, of claim scope by the inventor. In that instance as well, the inventor has dictated the correct claim scope, and the inventor's intention, as expressed in the specification, is regarded as dispositive." *Id.*, citing *SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1343–44 (Fed. Cir. 2001). Here, the specification defines the following two terms pertinent to the few phrases for which the parties were unable to agree on construed meanings: Unit organization and Unit design. See '476 Patent Column 3, line 60 – Column 4, line 13. Those definitions coupled with plain and ordinary meaning govern here. Target asserts that the disputed terms cannot be construed pursuant to 35 U.S.C. §112, but the plain language used makes clear what

- 6 -

one of skill in the art would interpret these claims to require in light of the agreed-upon terms, so these phrases are appropriate for construction. *Honeywell Int'l, Inc., v. ITC*, 341 F.3d 1332, 1338 (Fed. Cir. 2003); *Novo Indus., L.P. v. Micro Molds Corp.*, 350 F.3d 1348, 1353, 1358 (Fed. Cir. 2003).

### C. Analysis

Wongab's construction will be helpful to the finder of fact by resolving these legal disputes regarding claim scope, and should be adopted. "It is critical for trial courts to set forth an express construction of the material claim terms in dispute, in part because the claim construction becomes the basis of the jury instructions, should the case go to trial. It is also the necessary foundation of meaningful appellate review." *AFG Indus., Inc. v. Cardinal IG Co.*, Inc., 239 F.3d 1239, 1247 (Fed. Cir. 2001) (internal citation omitted).

In connection with certain other phrases, the construction should follow the general canons of construction. Indeed, "[a] claim construction that gives meaning to all the terms of the claim is preferred over one that does not do so." *Agilent Techs., Inc. v. Affymetrix, Inc.,* 567 F.3d 1366, 1378 (Fed. Cir. 2009), citing *Merck & Co. v. Teva Pharms. USA, Inc.,* 395 F.3d 1364, 1372 (Fed. Cir. 2005).

To that end, the vast majority of the terms in the '476 Patent that are not explicitly defined therein need only be given their ordinary meaning. *Encap LLC v. Oldcastle Retail Inc.*, No. 11–C–808, 2012 WL 2339095, at *9 (E.D. Wis. June 19, 2012) ("Claim construction is not intended to allow for needless substitution of more complicated language for terms easily understood by a lay jury."). This principle is particularly applicable to the disputed phrases here.

It is also true that: (1) one may not read a limitation into a claim from the written description; but (2) one may look to the description to define a term already in a claim limitation, for a claim must be read in view of the specification of which it

is a part. *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1248 (Fed. Cir. 1998). Looking to the description would be proper here.

The preferred embodiment here is fabric, as set forth in the '476 Patent. *See Adams Respiratory Therapeutics, Inc. v. Perrigo Co.*, 616 F.3d 1283, 1290 (Fed. Cir. 2010) ("A claim construction that excludes the preferred embodiment 'is rarely, if ever, correct and would require highly persuasive evidentiary support.'" (quoting *Vitronics Corp. v. Conceptronic,* Inc., 90 F.3d 1576, 1583–84 (Fed. Cir. 1996))

And "a claim is not limited to the embodiments described in the specification unless the patentee has demonstrated a clear intention to limit the claim's scope with words or expressions of manifest exclusion or restriction." *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 843 (Fed. Cir. 2010) (citation and internal quotations omitted).

The Federal Circuit, however, applies a "presumption that the same terms appearing in different portions of the claims should be given the same meaning unless it is clear from the specification and prosecution history that the terms have different meanings at different portions of the claims." *Paragon Solutions, L.L.C. v. Timex Corp.*, 566 F.3d 1075, 1087 (Fed. Cir. 2009), quoting *PODS, Inc. v. Porta Stor, Inc.,* 484 F.3d 1359, 1366 (Fed. Cir. 2007)).

We should also look to the specifications for definitions given the language and implications of the '476 Patent. *Trustees of Columbia Univ. in City of New York v. Symantec Corp.*, 811 F.3d 1359, 1364 (Fed. Cir. 2016) ("a claim term may be clearly redefined without an explicit statement of redefinition and even when guidance is not provided in explicit definitional format, the specification may define claim terms by implication such that the meaning may be found in or ascertained by a reading of the patent documents.") (citation and internal quotation marks omitted).

The parties agreed on constructions for the majority of the relevant terms and phrases used in the '476 Patent, and the few remaining phrases merely pair agreed-

upon terms with simple, non-technical language best construed with plain and ordinary meaning. For example, the parties agreed on a construction for "unit designs," and one of the disputed phrases is "at least two-row unit designs." A plain reading of this phrase calls for unit designs of a least two rows. Other disputed phrases hinge on words such as "width," "wider," "length," "longer," "adjacent," and "zigzag." Each of these terms can and should be read under their plain and ordinary meaning and can be properly construed because one of skill in the art would readily interpret what these patent claims require. *Honeywell* 341 F.3d at 1338.

In light of the above, the proper constructions for the disputed terms are:

| Claim(s) | Term or Phrase | Plaintiff's Construed Meaning | Specification Support |
|---|---|---|---|
| 5, 6, 7 | "at least two-row unit designs" | There are at least two rows of unit designs. | 2:57-64; 4:6-9; 4:55-67; 5:17-57; 6:39-7:2 |
| 5 | "the unit organizations of any one unit design" | The unit organization of any particular unit design. | 6:41-43; Fig. 13 |
| 5 | "arrayed in zigzag with the unit organizations of another unit design" | Offset from the unit designs adjacent to it. | 6:41-43; Fig. 13 |
| 6 | "with the unit organizations" | With particular unit organizations. | |
| 7 | "the width of any one unit design" | Width of a unit design. | 4:10-12 |
| 7 | "is wider than that of another unit design" | Longer than another unit design's width. | 4:10-12 |
| 7 | "adjacent to the one unit design" | Immediately above, below, or next to the unit design. | |
| 8 | "the length of one unit organization" | Length of a unit organization. | 4:6-9 |
| 8 | "longer than that of another unit organization" | Longer than another unit organization's length. | 4:6-9 |
| 8 | "adjacent to the one unit organization" | Immediately above, below, or next to the unit organization. | |

## IV. Conclusion

In light of the above, Wongab requests that the Court adopt Wongab's constructions for the disputed terms.

Dated: October 17, 2018      By:    */s/ Scott A. Burroughs*
                                             Scott A. Burroughs, Esq.
                                             Trevor W. Barrett, Esq.
                                             DONIGER /BURROUGHS
                                             Attorneys for Plaintiff

WONGAB COPRORATION'S OPENING CLAIM CONSTRUCTION BRIEF