Stephen M. Doniger (SBN 179314)
stephen@donigerlawfirm.com
Scott A. Burroughs (SBN 235718)
scott@donigerlawfirm.com
Trevor W. Barrett (SBN 287174)
tbarrett@donigerlawfirm.com
Justin M. Gomes (SBN 301793)
jgomes@donigerlawfirm.com
DONIGER / BURROUGHS
603 Rose Avenue
Venice, California 90291
Telephone: (310) 590-1820
Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WONGAB CORPORATION,<br><br>Plaintiff,<br><br>        v.<br><br>TARGET CORPORATION; et al.,<br><br>Defendants. | Case No. 2:18-cv-02625-JAK-AS<br>_Hon. John A. Kronstadt Presiding_<br><br>**WONGAB CORPORATION'S RESPONSIVE CLAIM CONSTRUCTION BRIEF**<br><br>**Hearing Date:  November 19, 2018**<br>**Time:           10:30 a.m.**<br>**Courtroom:    10B - 1st Street** |

- 1 -

1    *TO THE HONORABLE COURT, ALL PARTIES, AND ATTORNEYS OF*
2    *RECORD:*

3        PLEASE TAKE NOTICE THAT Plaintiff, Wongab Corporation, hereby
4    submits its Responsive Claim Construction Brief regarding terms used in Claims 1, 2,
5    3, 4, 5, 6, 7, and 8 of Patent No. 8,448,476 B2 ('476 Patent").

6    **I.    Introduction**

7        Defendant Target Corporation seeks to evade all patent liability in this action
8    by attacking the unambiguous language of the '476 Patent, but the '476 Patent's
9    claims are readily discernable by one with skill in the art, and are sufficiently clear
10   and definite. There is no reasonable question of the meaning or scope of any of the
11   challenged language even as read by a layman.

12   **II.    Legal Standard for Claim Construction**

13       "[W]ords of a claim are generally given their ordinary and customary
14   meaning." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc)
15   (internal quotations omitted). "[T]he ordinary and customary meaning of a claim
16   term is the meaning that the term would have to a person of ordinary skill in the art in
17   question at the time of the invention." *Id.* at 1313. "[T]he person of ordinary skill in
18   the art is deemed to read the claim term not only in the context of the particular claim
19   in which the disputed term appears, but in the context of the entire patent, including
20   the specification." Id. "In some cases, the ordinary meaning of claim language as
21   understood by a person of skill in the art may be readily apparent even to lay judges,
22   and claim construction in such cases involves little more than the application of the
23   widely accepted meaning of commonly understood words." Id. at 1314.

24
25
26
27   ///
28

- 2 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**III.     Wongab's Constructions are Proper**

    A.     <u>Plain and Ordinary Meaning of "two-row" in Claims 5, 6, and 7 is</u>
          <u>sufficient and aligns with the remaining claims and specification</u>

    The phrase "two-row" should be construed with its obvious plain and ordinary meaning which aligns with the remaining patent claims and is sufficiently defined. "A claim construction that gives meaning to all the terms of the claim is preferred over one that does not do so." *Agilent Techs., Inc. v. Affymetrix, Inc.,* 567 F.3d 1366, 1378 (Fed. Cir. 2009), citing *Merck & Co. v. Teva Pharms. USA, Inc.,* 395 F.3d 1364, 1372 (Fed. Cir. 2005). As used in these claims, "two-row" could only reasonably mean "having two rows."  This definition is supported by the specification because the phrase "two rows" is recited in the specification in Col. 6, lines 46, 49-50, and 53-54 (see also FIGs 12-14) concerning the same subject matter as Claims 5, 6, and 7. Even if the use of "two-row" in these claims is duplicative in light of the language in Claim 1, "two-row" is still sufficiently defined in context given that there is no ambiguity as to what it means in Claims 5, 6, and 7. Because one of ordinary skill in the art would interpret this phrase as suggested, it is appropriate for construction. *Honeywell Int'l, Inc., v. ITC*, 341 F.3d 1332, 1338 (Fed. Cir. 2003); *Novo Indus., L.P. v. Micro Molds Corp.*, 350 F.3d 1348, 1353, 1358 (Fed. Cir. 2003). Wongab's proposed construction for "two-row" is proper.

    B.     <u>Claim 6 is enforceable despite the obvious correctable error</u>

    The disputed text in Claim 6, "unit the organizations of another unit design," was plainly intended to state, "the unit organizations of another unit design." This is an obvious and correctable error. *CBT Flint Partners, LLC v. Return Path, Inc*., 654 F.3d 1353, 1358 (Fed. Cir. 2011). With that simple, obvious correction, this language is only subject to one reasonable interpretation. The parties agreed on definitions for "unit organizations" and "unit designs," so the only reasonable reading of this phrase combines those terms with the plain meaning of the remaining terms "of" and

WONGAB COPRORATION'S RESPONSIVE CLAIM CONSTRUCTION BRIEF

"another," i.e. "the unit organizations within a different unit design." *Phillips* 415 F.3d at 1312. This clear meaning is further supported by the specification. Col. 6, lines 39-41 and FIG. 12. This phrase is properly construed using plain meanings in conjunction with the agreed-on constructions. Reviewing Claim 5 and FIGs 12 and 13, make this meaning even more apparent. Claim 5 concerns unit designs that are staggered or zig-zag (FIG. 13), whereas Claim 6 concerns unit designs that are parallel or straight across (FIG. 12). The intended language is unambiguous. Claim 6 is enforceable despite its obvious correctable error.

C.  Claims 7 and 8 are sufficiently defined

There is no ambiguity in the disputed language in Claims 7 and 8. "[T]he length of [A] is longer than that of [B]" and "the width of [C] is wider than that of [D]. Any person with ordinary skill in the art would interpret these statements to concern B's length and D's width. *Honeywell Int'l, Inc.* 341 F.3d at 1338; *Novo Indus., L.P.*, 350 F.3d at 1353, 1358. This is not merely a possible interpretation of these phrases, it is the only cognizable meaning, otherwise Target would likely have identified any alternative interpretation. Because any person with skill in the art, and any layperson, would interpret these phrases as Wongab proposes, these claims are sufficiently defined and enforceable.

D.  Claim 1 is supported and defined

It is "presum[ed] that the same terms appearing in different portions of the claims should be given the same meaning unless it is clear from the specification and prosecution history that the terms have different meanings at different portions of the claims." *Paragon Solutions, L.L.C. v. Timex Corp.*, 566 F.3d 1075, 1087 (Fed. Cir. 2009), quoting *PODS, Inc. v. Porta Stor, Inc.*, 484 F.3d 1359, 1366 (Fed. Cir. 2007)). "[A] network structure" in line 11 of Claim 1 should be given the same meaning as "a network structure" in line 15 of the claim. There is no support in the specification or the prosecution history of the '476 Patent to determine that these phrases must refer

- 4 -

to two distinct "network structures." The use of "a network structure" in both instances indicates that the claim language is not limited to loops from any particular network structure. These portions of the claim (lines 11 and 15-16) are concerned with the particular loop shapes of the network structure – "a specific loop shape" and "a different loop shape" – not the network structure itself. Where the claims in the '476 Patent refer to distinct or specific iterations of the key terms, those claims explicitly identify the terms as such. For example: "a specific loop shape," "a different loop shape," "a specific chain number group," "one unit design," "another unit design," "one unit organization," "another unit organization." Col. 8 lines 7, 12, 17-18, 25-27, 30-32, 35-36, and 39-41. The two uses of "a network structure" in Claim 1 need not refer to two different structures.

Assuming for the sake of argument that the second usage of "a network structure" refers to a different network structure from the first, this claim is still sufficient to proceed. Target presumes that only one network structure is contemplated by the specification, but especially in light of the agreed definition for that phrase – "the configuration of unit organizations with one another" – different portions of the same warp knitting fabric could be described as different network structures and the entire fabric could still be subject to several of the '476 Patent's claims. Lastly, "a claim is not limited to the embodiments described in the specification unless the patentee has demonstrated a clear intention to limit the claim's scope with words or expressions of manifest exclusion or restriction," so even if a warp knitting fabric with more than one network structure is not a specific embodiment cited in the specification, Claim 1 would still be viable even if it is deemed to concern two network structures. *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 843 (Fed. Cir. 2010) (citation and internal quotations omitted). Claim 1 can properly be construed and enforced.

WONGAB COPRORATION'S RESPONSIVE CLAIM CONSTRUCTION BRIEF

## IV.   Conclusion

In light of the above, Wongab requests that the Court adopt Wongab's constructions for the disputed terms.

Dated:  October 29, 2018          By:   */s/ Scott A. Burroughs*
Scott A. Burroughs, Esq.
Trevor W. Barrett, Esq.
DONIGER /BURROUGHS
Attorneys for Plaintiff

- 6 -